UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| SAMMY WILLHOITE, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. G-09-5 |
| | § | |
| CHARLES JAMES, *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER OF DISMISSAL

Sammy Willhoite (TDCJ # 1359693), an inmate in custody of the Texas Department of Criminal Justice-Correctional Institutions Division, (TDCJ-CID), has filed a complaint under 42 U.S.C. § 1983, alleging an excessive use of force by Major Charles James at the Stringfellow Unit. Defendant has moved for summary judgment by and through the Attorney General of Texas. (Doc. No. 72). Willhoite has filed a response (Doc. No. 78). Based on the pleadings, the motions, the summary judgment record and the applicable law, this court grants the defendant's motion for summary judgment. The reasons for this ruling are stated below.

I.  BACKGROUND

A.  Plaintiff's Allegations

In his more definite statement (Doc. No. 15), the plaintiff alleges that on September 13, 2008, he reached through his cell bars at the Stringfellow Unit and tried to upset a tray of sack lunches that an inmate was carrying. (Doc. No. 9, p. 2). Officer Aguilar was in front of the cell and called for a supervisor. Major James responded to the call and asked plaintiff why he was upset. Before the plaintiff could answer, James told him that he couldn't stick his arms out of his cell. "As an act of disobedience," the plaintiff "quickly poked half of my forearm out the bars and retrieved it instantly." (Doc. No. 15, p. 8). James then stated, "You know what? Turn

1

around and let me put you in hand restraints." I told him no and tried to continue to explain my dilemma." *Id.* Major James then raised his left hand and with his index finger, motioned in small circles to the picket officer to roll the doors. When the doors opened, the plaintiff took one step forward to exit the cell when Major James "bum-rushed" and struck him in the head while charging forward. (Doc. No. 15, p. 13). The plaintiff suffered a large amount of head swelling and a cut behind his right ear that required four stitches. When he arrived in the infirmary he suffered a seizure. Plaintiff alleges that he continues to suffer seizures that interfere with ordinary activities such as "while on a ladder or top bunk, driving a car, etc." (Doc. No. 15, p. 11). He has been told by others that he appears to be in a daze. He suffers from headaches and experiences vertigo. The plaintiff seeks compensatory and punitive damages.

   **B.** **Defendant's Argument and Summary Judgment Evidence**

In the motion for summary judgment, defendant denies the plaintiff's allegations of excessive use of force and states that the plaintiff engaged in disruptive behavior that required some action. The defendant has attached the following exhibits, along with a business record affidavit in support of the motion: (Doc. No. 72):

   Exhibit A: Relevant portions of plaintiff's TDCJ grievance records, Bates stamped 1-57, with attached business records affidavit;

   Exhibit B: Major Use of Force Report, Bates Stamped 1-55, including DVD copy of use of force video, with attached business records affidavit;

   Exhibit C: TDCJ Office of the Inspector General Case No. UF.14.0250.2008, Bates Stamped 1-131, with attached business records affidavit;

   Exhibit D: Relevant TDCJ Medical Records

<u>Exhibit E</u>:     Relevant UTMB Medical Records

The Major Use of Force Report (Doc. No. 72, Exh. B), witness statement of Lt. Joseph Carr, (*Id*. p. 16), reveals that on September 13, 2008, the Stringfellow Unit was on lockdown status due to Hurricane Ike and a recent escape.  When Officer Aguilar approached the plaintiff's cell to give him a sack meal, the plaintiff approached the door of his cell in an aggressive manner and began using vulgar language.  The plaintiff then reached out of his cell and grabbed Officer Aguilar in an aggressive manner around her left elbow area.  At this point, Officer Aguilar called for assistance and a supervisor.  Officer Jordan was the first to respond, immediately prior to Major James.  When Major James arrived, officers Aguilar and Jordan were arguing with the plaintiff.  Both officers stated to James that the plaintiff was disrupting chow and cursing staff members due to the content of his sack lunch.  Major James instructed staff members to leave the area because they were the focus of the plaintiff's "tirade."  Major James then told the plaintiff to remain calm and to prepare to be placed in hand restraints.  Officers McWhorter and Kennison were also at the plaintiff's cell door at this time.  When Major James repeated his warning to the plaintiff to calm down and submit to hand restraints or a force cell move team would be used, the plaintiff refused, cursed at him and told James to come and get him.  Major James called for a video camera when the cell doors on the row opened.  The plaintiff then stepped out of his cell in an aggressive manner with his fist clinched and stated he was not turning around.  Major James pushed/shoved the plaintiff to the back of the cell in an attempt to restrain him against the back wall, but was unsuccessful.  The plaintiff struck Major James with a closed fist on the left side of his face and knocked James' glasses to the floor.  Major James then struck the plaintiff with his right closed fist to the left side of his face, causing him to lose his balance and fall to the floor. James immediately attempted to roll the plaintiff off his back in order to restrain him by placing

his right hand on the plaintiff's right shoulder. The plaintiff bit Major James on the right index finger. James then struck the plaintiff in his face with his left fist and the plaintiff released James' index finger from his bite. The plaintiff tried to strike James again and continued resisting the efforts of James, Kennison and McWhorter to restrain him. After he was restrained, the plaintiff was escorted to the unit infirmary for a use-of-force physical. He had a 1 to 2 cm. laceration behind his right ear, a contusion on the right side of his face and top of his head, and a 1 cm. superficial laceration on his right cheek. The plaintiff was transported to Hermann Hospital, where he received four stitches behind his right ear. (Doc. No. 72, Exh. B, pp. 16-18).

The DVD video (Doc. No. 72, Exh. B) shows the plaintiff walking with escorts from his cell to the infirmary, which took several minutes. While walking, plaintiff was extremely active and verbally abusive towards the prison escorts. He moved quickly and without assistance through the corridor and down the stairs without difficulty. At one point, he was told to slow down by the officials. Several minutes after arriving at the infirmary and speaking to the nurse, the plaintiff suddenly lunged forward and fell, appearing to have a seizure. This prompted the plaintiff's transport to Hermann Hospital, where an extensive battery of neurological tests were conducted. The medical records show that none of the tests confirmed a finding that plaintiff had a seizure disorder or that there existed any physiologic reason for him to have suffered a seizure. He was observed for 36 hours then returned to his prison unit. Medical records show that the plaintiff failed to show for his next five follow-up medical appointment. Medical records also show that the plaintiff had never suffered a seizure before the incident in the infirmary and has not suffered one since.

## II.SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). The party moving for summary judgment has the initial burden of demonstrating the absence of a material fact issue. *Kee v. City of Rowlett, Tex.*, 247 F.3d 206, 210 (5th Cir. 2001). If the moving party meets its initial burden, "[t]he nonmoving party 'must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim.'" *Peterson v. City of Fort Worth, Tex.,* 588 F.3d 838, 844 (5th Cir. 2009) (quotation omitted). The non-movant must do more than simply show that there is some "metaphysical doubt" as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 478 U.S. 574, 587 (1986). "A fact is material only if its resolution would affect the outcome of the action, ... and an issue is genuine only 'if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party.'" *Wiley v. State Farm Fire and Cas. Co.,* 585 F.3d 206, 210 (5th Cir. 2009).

In deciding whether a genuine and material fact issue has been created, the facts and inferences to be drawn from them must be reviewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co.,* 478 U.S. at 587-88. However, factual controversies are resolved in favor of the non-movant "only when both parties have submitted evidence of contradictory facts." *Alexander v. Eeds*, 392 F.3d 138, 142 (5th Cir. 2004). The nonmovant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings. *Diamond Offshore Co. v. A & B Builders, Inc.,* 302 F.3d 531, 545 n. 13 (5th Cir. 2002).

Likewise, "conclusory allegations" or "unsubstantiated assertions" do not meet the non-movant's burden. *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.,* 530 F.3d 395, 399 (5th Cir. 2008). Instead, the nonmoving party must present specific facts which show "the existence of a genuine issue concerning every essential component of its case." *American Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l.* 343 F.3d 401, 405 (5th Cir. 2003).

### III. QUALIFIED IMMUNITY

The defendant argues that he is entitled to summary judgment based on qualified immunity. The defense of qualified immunity protects government officials performing discretionary functions from "liability for civil damages insofar as their conduct does not violate clearly established rights which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Lytle v. Bexar County, Tex.,* 560 F.3d 404, 409 (5th Cir. 2009). A two-step process has traditionally been employed in evaluating the defense of qualified immunity. *Saucier v. Katz,* 533 U.S. 194 (2001). The first prong of the *Saucier* analysis asks whether, taken in the light most favorable to the party asserting the injury, the facts alleged show that the official's conduct violated a constitutional right. *See Scott v. Harris*, 550 U.S. 372 (2007) (citing *Saucier*, 533 U.S. at 201). "If, and only if, the court finds a violation of a constitutional right, 'the next, sequential step is to ask whether the right was clearly established ... in light of the specific context of the case.'" *Id.* (quoting *Saucier*, 533 U.S. at 201). If there is evidence to support the violation of a constitutional right, the second prong of the *Saucier* analysis asks whether qualified immunity is appropriate, nevertheless, because the defendant's actions were objectively reasonable "in light of clearly established law at the time of the conduct in question." *Hampton Co. Nat'l Sur., L.L.C. v. Tunica County, Miss.,* 543 F.3d 221, 225 (5th Cir. 2008) (quoting *Freeman v. Gore*, 483 F.3d 404, 410-11 (5th Cir. 2007)). More recently, the

6

Supreme Court held that the two-prong protocol established in *Saucier* is no longer mandatory for resolving all qualified immunity claims. *Pearson*, 129 S.Ct. at 818. Reviewing courts are permitted "to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id*. The constitutional question at stake in the present case is whether the plaintiff was the victim of an excessive use of force.

## IV.    ANALYSIS

Incarcerated felons have a right under the Eighth Amendment not to be subjected to wanton abuse by custodial officials. *See Whitley v. Albers*, 475 U.S. 312 (1986). Whenever prison officials are accused ofusing excessive force in violation of the Eighth Amendment, the core question is "whether [the] force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. *Wilkins v. Gaddy*, ___ U.S. ___, 175 L.Ed. 2d 995 (2010), *citing Hudson v. McMillian.* 503 U.S. 1 (1992).

Under the Eighth Amendment, a correctional officer's use of excessive force against a prisoner may constitute cruel and unusual punishment. *Hudson v. McMillian*, 503 U.S. 1 (1992). Among the factors to be considered in determining whether the force was used in good faith or wantonly and maliciously are: (1) the extent of the injury suffered; (2) the need for the application of force; (3) the relationship between the need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and, (5) any efforts made to temper the severity of a forceful response." *Baldwin v. Stalder*, 137 F.3d 836, 838-39 (5th Cir. 1998).

The summary judgment evidence shows that the plaintiff was engaging in disruptive behavior that was hostile, aggressive and assaultive. Major James gave the plaintiff verbal orders to calm down and the plaintiff refused. He twice told the plaintiff to turn around and

prepare to be handcuffed and the plaintiff again refused. (The plaintiff admits in his complaint that he engaged in "disobedient behavior."). When the door opened and the plaintiff attempted to exit his cell, Major James pushed him back into his cell to subdue him and the plaintiff escalated the situation by cursing at James and striking him in the head with his fist. The plaintiff continued to resist and it became necessary for two additional officers to enter the cell and help place the plaintiff on the ground so that he could be handcuffed. Force was thus necessary and appropriate to restore order and discipline. Defendant James attempted to talk to the plaintiff and told him to calm down. The plaintiff, however, refused to obey the order. Defendant James had the authority as well as the duty to use force to prevent the plaintiff from harming him (James) further and other prison officials who were helping with the detainment. *See Baldwin*, 137 F.3d at 840. The defendant clearly attempted to employ efforts short of the use of force before resorting to the use of force. There is no evidence, nor has the plaintiff provided any, to suggest that the force used by Major James was any more than necessary to restrain and subdue the plaintiff, or, that the force was used for any reason other than a good faith effort to restore order. The use-of-force report and the report of the TDCJ Inspector General also concluded that the plaintiff attempted to assault the defendant and that the defendant justifiably and appropriately used force. (Doc. No. 72, Exh. B, pp. 1-2, 8-9; Exh. C, p. 6).

In his response, the plaintiff did not address or discuss the *Hudson* factors, nor did he present or cite any competent summary judgment evidence standing for the proposition that he was the victim of excessive force. Instead, he made a self-serving statement that he was the victim of an unprovoked attack and that defendant James and the witnesses to the event made the basis of this suit are lying and involved in a conspiracy against him.

The second prong in the qualified immunity analysis concerns the objective reasonableness of the defendant's actions. The plaintiff did not show that Major James' actions were objectively unreasonable. Indeed, he admitted to displaying disobedient behavior, which was witnessed by several prison officials and which prompted the reason for Major James' presence in the first place. By comparison, the defendant submitted competent summary judgment evidence supporting a conclusion that his actions were not sadistic or malicious but were reasonable for the purpose of restoring order. The defendant is entitled to summary judgment based on qualified immunity.

The plaintiff also alleges in few, very conclusory statements, that officer Aguilar conspired to file a false disciplinary case against him to cover the beating; officer McWhorter conspired to file a false witness statement to cover the beating; and assistant warden Alphonso James conspired to altered his disciplinary record. The plaintiff failed to offer any specific, operative facts to show that any defendant agreed to commit an illegal act. *See Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir. 1990). Bald allegations that a conspiracy existed are insufficient. *Lynch v. Cannatella*, 810 F.2d 1363 (5th Cir. 1987); *Yglesias v. Gulf Stream Park Racing Ass'n.* 201 F.2d 817, 818 (5th Cir.), *cert. denied*, 345 U.S. 993 (1953). These claims are without merit and warrant no further discussion.

## IV. CONCLUSION

For the reasons discussed, the defendant's motion for summary judgment is **GRANTED** and this action is **DISMISSED** with prejudice.

All pending motions are **DENIED** as moot.

**The Clerk shall provide a copy of this order by regular mail, facsimile transmission, or e-mail to: (1) the TDCJ - Office of the General Counsel, P.O. Box 13084, Austin, Texas,**

**78711, Fax Number (512) 936-2159; (2) the Inmate Trust Fund, P.O. Box 629, Huntsville, Texas 77342-0629, fax: 936-437-4793; and (3) the District Clerk for the Eastern District of Texas, Tyler Division, 211 West Ferguson, Tyler, Texas, 75702, Attention: Manager of the Three-Strikes List.**

SIGNED at Houston, Texas this 27th day of September, 2011.

_____
Kenneth M. Hoyt
United States District Judge